IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LARRY A. SPRINGER, | ) |
| Plaintiff, | )  8:05CV41 |
| v. | ) |
| UNION PACIFIC CORPORATION, ELROY J. SCHROER, and CONCENTRA INTEGRATED SYSTEMS, INC., | )  MEMORANDUM AND ORDER |
| Defendants. | ) |

This matter is before the court on cross motions for summary judgment, Filing Nos. 41 and 46. This case involves a claim for disability benefits pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1101 *et seq*. The court has carefully reviewed the record, briefs, and relevant case law and concludes that the defendants' motion for summary judgment will be granted and the plaintiff's motion denied.

**Introduction**

Defendant Union Pacific Corporation (UP) maintained a long-term disability policy (the Plan) on its employees, including the plaintiff in this case. Plaintiff worked as a train dispatcher for UP until such time as he became fully disabled in November 1996. Elroy J. Schroer, Senior Vice President of Human Resources for UP, administered the Plan at issue in this lawsuit. The Plan, along with the supplement elected by the plaintiff, provided 70% of monthly salary upon disability.

UP provided plaintiff with disability payments of approximately $3,939.37 per month. UP initially estimated that it would pay a little over $2,000 of that amount and the Railroad

Retirement Board (RRB) would pay the difference. However, in early 1997 plaintiff applied for disability with the RRB, and the RRB initially denied the application. Consequently, UP began paying the full amount to plaintiff each month. UP claims it told plaintiff that he must inform it of any additional disability or retirement benefits, as such would be deducted from the total amount of the payment by UP. At a later date in 1997 and upon reconsideration, the RRB approved benefits to the plaintiff. Plaintiff did not inform the UP administrator of receipt of these benefits. Plaintiff continued to receive both sets of benefits until early 2003, at which time UP's third-party administrator, Concentra Integrated Systems, Inc. (CIS), conducted an audit of plaintiff's disability file. CIS asked plaintiff for a copy of the RRB annuity award. Plaintiff agrees he had not previously supplied a copy of that award to the administrator of the UP disability Plan, but he argues that he did provide a copy of the award to the human resources group. Filing No. 44, SF #16. However, no evidence has been submitted by the plaintiff to the court in this regard. Further, upon request by CIS, plaintiff was unable to locate a copy of this disability annuity award and the RRB indicated that it no longer had a copy of the award letter. *Id.* at #18 and #19.

The parties agree that between November 1996 and August 2003, plaintiff received over $161,000 in railroad retirement benefits and $321,058.62 in long-term disability benefits. UP contends that plaintiff was entitled to receive $3,911.37 in total per month for disability. In August 2002 UP retained CIS as the third-party administrator. CIS conducted an audit of plaintiff's payments and determined that substantial overpayments had occurred over the preceding seven years. Consequently, on August 8, 2003, CIS notified plaintiff that it intended to reduce the benefit payment from $3,911.27 to $1,903.28. Plaintiff disagreed with this reduction and disagreed that he owed approximately $161,000

in overpayments. CIS then informed plaintiff that his benefit would be further reduced in the future in order to recover the overpayments.

Plaintiff filed suit under ERISA. Plaintiff requested: (1) an injunction to prevent further breaches of duties under the long-term disability plan; (2) general damages and compensatory relief; (3) special damages; (4) liquidated and statutory penalties; (5) attorney fees and costs; (6) restoration of all disability benefits; and any other equitable relief.

**Legal Standards**

Under ERISA, a plan beneficiary has the right to judicial review of a benefits determination. *See* 29 U.S.C. § 1132(a)(1)(B). The first issue to consider in an ERISA case is the appropriate standard of review. *See, e.g., Tillery v. Hoffman Encls., Inc.,* 280 F.3d 1192, 1197 (8th Cir. 2002). Where a plan gives the administrator discretionary authority to determine eligibility for benefits, the court ordinarily reviews the administrator's decision for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998). However, even if a plan gives the plan administrator discretion, a less-deferential "sliding-scale" standard of review is appropriate where a beneficiary presents material, probative evidence demonstrating that: 1) a palpable conflict of interest or serious procedural irregularity existed, 2) which caused a serious breach of the plan administrator's fiduciary duty to the claimant. *Id.* at 1160-61. *Morgan v. Contractors, Laborers, Teamsters, & Eng'rs Pension Plan,* 287 F.3d 716, 722 (8th Cir. 2002). A claimant must produce evidence sufficient to satisfy this two-point requirement in order for a court to apply the "sliding-scale" standard. *Id.* In so doing, the claimant must offer evidence that gives rise to serious doubts as to

3

whether the result reached was the product of an arbitrary decision or the plan administrator's whim. *Id.*

**Discussion**

*A. Discretion*

After reviewing the Plan, the court concludes that the Plan administrator has discretion to interpret the Plan. The long-term disability Plan dated August 1, 1996, states: "Union Pacific reserves the right to interpret the meaning of this policy and to make final decisions on all cases. In the event of conflict, Union Pacific's named Fiduciary Plan Administrator, and/or designees, will make the final determination." Filing No. 44, SPRNG 00004. This language is sufficient to confer discretion on the administrator to interpret the meaning of the Plan. *See Pralutsky v. Met. Life Ins. Co.*, 435 F.3d 833, 837 (8th Cir. 2006).

*B. Administrator's Decision*

Accordingly, the court will apply the "abuse of discretion" or "arbitrary and capricious" standard of review. Under that standard, the court determines whether the Plan administrator's decision to deny benefits was reasonable. *Clapp v. Citibank, N.A. Disability Plan,* 262 F.3d 820, 828 (8th Cir. 2001). To determine reasonableness, the court must "determine whether the decision is supported by substantial evidence, which is 'more than a scintilla but less than preponderance.'" *Id. (quoting Sahulka v. Lucent Techs., Inc.*, 206 F.3d 763, 767-68 (8th Cir. 2000)). A plan administrator's decision will be deemed reasonable if a reasonable person could have reached a similar decision, given the evidence before him. *Id.* Thus, the court will not disturb a decision supported by a

reasonable explanation even though a different reasonable interpretation could have been made. *Id.*

Five factors are relevant to the determination of reasonableness: 1) whether the administrator's interpretation is consistent with the goals of the plan; 2) whether the interpretation renders any language in the plan meaningless or internally inconsistent; 3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; 4) whether the administrator has interpreted the relevant terms consistently; and 5) whether the interpretation is contrary to the clear language of the plan. *Finley v. Special Agents Mut. Ben. Ass'n*, 957 F.2d 617, 621 (8th Cir. 1992). The court will now turn to the 1996 Plan and the 1997 letter in this regard.

The 1999 Summary for the Long-Term Disability Plan stated, "[y]our LTD benefits will be reduced by any other benefits directly payable to you from Social Security, Workers' Compensation, Railroad Retirement, . . . If family disability benefits are also payable from Social Security or Railroad Retirement, LTD benefits will be adjusted so the combined income from all sources does not exceed 75 percent of your earnings." Filing No. 44, SPRNG 00034. The 1996 Enrollment Guide stated: "[b]enefits [will be] reduced by Social Security Railroad Retirement. . . ." Filing No. 44, SPRNG 00141.

In April of 1997 Dan Bratsveen, Union Pacific's LTD manager, sent a letter to the plaintiff notifying him that he would receive retroactive disability payments, and stated:

> In order for your service to continue accruing under the Pension Plan, you must qualify for Railroad Retirement disability benefits. Therefore, if you have not already done so, you should immediately apply for a disability annuity under the Railroad Retirement Act.
>
> If the amount from RRB is different from the estimate, the appropriate adjustments will be made when your reward is 'final'. You should furnish a

>  copy of your award from the U.S. Railroad Retirement regarding the disability amount to my office as soon as possible, so that these adjustments are timely made.

Filing No. 44, SPRNG 00230. The letter further noted that the combination of UP disability and the annuity from RRB would be $3,939.37[1] in total. In June 1997, plaintiff responded stating that he had been refused benefits by the RRB and he asked for "release of the funds held by Union Pacific Railroad in the amount of $2,024 per month since November 13, 1996 through the current date." Filing No. 44, at 221. The court finds the 1996 language as supported by the 1997 letter clearly contemplated a reduction of the RRB benefits from the total UP benefits, and the plaintiff's response supports defendants' suggestions that plaintiff understood there would be an offset.

After analyzing the relevant Plan and guide sections, in conjunction with the clear directive set forth in the April 1997 letter, the court finds the administrator's decision is reasonable. The language clearly contemplates that UP disability payments will be reduced if the railroad retirement benefits are received. The court further finds that plaintiff failed to inform the UP administrator of these payments.

Having determined that the 1996 Plan clearly provided for reduction of benefits if RRB also paid benefits, the court must now determine if the policy language contemplated or allowed the administrator to offset UP overpayments. It is clear from the 1996 language that benefits will be reduced if there is double payment. It is also clear that the Plan does not set forth a specific recouping or offset provision. Under ERISA, an administrator's interpretation must be reasonable and not arbitrary and capricious. *See Spray v. UNUM*

---

[1] From the beginning Union Pacific calculated this amount incorrectly, as it included vacation pay as a part of the rate. Union Pacific has also reduced the monthly payment by the difference in the vacation calculation. The correct monthly amount should have been $3,911.37.

*Life Ins. Co.*, 749 F. Supp. 800, 806 (W.D. Mich. 1989). Courts have upheld the right of a plan administrator to recoup benefits. *See, e.g., Connors v. Connecticut General Life Ins. Co.*, 272 F.3d 127, 137 (2nd Cir. 2001); *Carmarda v. Pan American World Airways, Inc., 956 F. Supp. 299, 310 (E.D.N.Y. 1997)* (under either plan summary or plan itself, administrator could offset benefits and recoup any overpayment)*; Spray*, 749 F. Supp. at 806 (administrator permitted to reduce award based on monthly benefits from Social Security); *Lopez v. Commonwealth Oil Refining Co., Inc.*, 833 F. Supp. 86, 89 (D.P.R. 1993) (same); *Stuart v. Metropolitan Life Ins. Co.*, 664 F. Supp. 619, 623-24 (D. Me. 1987) (recoupment and reduction of monthly payments for overpayment allowed). Common sense dictates that if the administrator has the right to adjust benefits, the administrator must have some discretion to fashion the adjustment. *See, e.g., Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1287 (9th Cir. 1990) (noting with approval that other courts have upheld retroactive and prospective recovery of benefits under ERISA even when plan does not specifically allow retroactive reimbursement); *Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1377-78 (6th Cir. 1996) (same); *Calloway v. Pacific Gas & Electric Co.*, 800 F. Supp. 1444, 1448 (E.D. Tex. 1992) ("recoupment of the benefits was proper under the plan and the administrator did not abuse his discretion interpreting the plan to require repayment").

The court finds such an interpretation by the administrator to be reasonable under *Finley*. First, allowing the offset will not hinder the goals of the Plan, providing disability benefits, and allowing the plaintiff to keep the additional payments could harm other members of the Plan; second, no part of the Plan will be rendered meaningless or inconsistent by the administrator's offset; third, the court finds the administrator's

interpretation does not conflict with ERISA; fourth, no evidence has been presented that the administrator has interpreted the offset inconsistently; and fifth, the interpretation is not contrary to the language in the Plan.

### C. 2004 Benefit Guide

Plaintiff also argues that UP amended its long-term disability Plan in 2004 to permit recovery of overpayments. This change, contends plaintiff, shows that such authority did not exist in the 1996 Plan. The 2004 Employees Flexible Benefit Guide, containing a provision addressing recovery of overpayment, states:

> RECOVERY OF OVERPAYMENT
>
> The Plan has the right to recover overpayments of STD or LTD benefits paid by the Plan. For example, if such benefits exceed the difference between your LTD benefit minus any offset for Other Replacement Income Benefits. The Plan may recover this amount either through your direct repayment or though a reduction to future STD or LTD benefits until the recovery is satisfied. This could occur, for instance, when the estimate of the RRB disability annuity award amount used as an offset when LTD benefits are initially calculated is less than the final RRB disability award amount. The resulting overpayment of LTD benefits would be required to be repaid to the Plan by the recipient.

Plaintiff argues that this amendment shows that UP did not permit the recoupment of overpayments. The court disagrees for two reasons

First, the court need not rely on the 2004 guide in its determination. The language in the 1996 Plan and guides and the 1997 letter are sufficient for the court to conclude that the administrator can recover payments from the plaintiff.

Second, because this is a welfare benefit Plan, UP is free to amend it. *See, e.g., Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F.3d 923, 925 (5th Cir. 1995) (noting that disability plan under ERISA was a welfare benefit plan as opposed to

a retirement-type subsidy, so ERISA's vesting, accrual and nonforfeiture provisions do not apply); *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 585 (1st Cir. 1993) (holding that voluntary separation plan and long-term disability plan were "employee welfare benefit plans" under ERISA); *Ruble v. UNUM Life Ins. Co.*, 913 F.2d 295, 297 (6th Cir. 1990) (holding that "any plan established by an employer to provide employee disability benefits, whether through the purchase of insurance or otherwise, is an 'employee welfare benefit plan'"); *Barker v. Ceridian Corp.*, 122 F.3d 628, 632-633 (8th Cir. 1997) (welfare benefit plans not subject to ERISA vesting requirements); *Hughes v. 3M Retiree Medical Plan*, 281 F.3d 786, 790 (8th Cir. 2002) ("welfare benefits under ERISA plan, as opposed to pension benefits, may unilaterally modify or terminate benefits at the employer's discretion"). *See also Arndt v. Security Bank S.S.B. Employees' Pension Plan*, 182 F.3d 538, 541 (7th Cir. 1999) (holding that "it is also undisputed that disability benefits can be changed by plan amendment"). The 1996 version of the Flexible Enrollment Guide permitted UP to change or discontinue the Plans. Filing No. 44, SPRNG 00143 and 00031. The existence of 2004 amendment fails to support plaintiff's argument that recoupment was not permitted under the 1996 Plan.

### D.  Conflict of Interest

Plaintiff also argues that there exists a conflict of interest, because the long-term disability benefits were derived from the railroad, and the Plan administrator and CIS receive their paychecks from the railroad. If a conflict is found, a less deferential standard is used. *Woo*, 144 F.3d at 1160. However, the court also finds that there is no conflict of interest between UP and its fiduciary and third-party administrator. Under ERISA, employers may appoint employees to act as the plan fiduciaries. 29 U.S.C. § 1108(c)(3).

9

The Fourth Circuit has found that this creates no conflict of interest. *De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1191 (4th Cir. 1989). The court finds no conflict in this case where the only allegation is that UP paid Mr. Schroer and CIS. *See Kolosky v. UNUM Life Ins. Co.*, 2006 WL 1379633 *2 (8th Cir. May 22, 2006) (must be a causal showing between alleged conflict of interest and benefits decision). Were the court to adopt this argument, employees could not be appointed as plan fiduciaries which would be contrary to § 1108(3).

Accordingly, the court finds the administrator's interpretation of the Plan is reasonable and is not arbitrary or capricious.[2]

THEREFORE, IT IS ORDERED THAT:

1. Defendants' motion for summary judgment, Filing No. 41, is granted;

2. Plaintiff's motion for summary judgment, Filing No. 46, is denied; and

3. A separate judgment will be entered in conjunction with this order.

DATED this 13th day of June, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge

---

[2]Although the court finds the administrator's interpretation of the plan is reasonable, the court makes no ruling on the amount of money the defendants are entitled to collect. The court is granting defendants' motion for summary judgment and dismissing the case. The Union Pacific may be responsible to some degree for failing to adequately audit its books and records over a seven-year period of time. This would seem especially applicable in cases such as this where a third-party offset is not only possible but probable. The court expresses no opinion whether estoppel or laches would apply to a determination of the amount of the offset. Accordingly, the court will leave the amount of the overpayment to the parties. The court urges the parties to negotiate this amount in good faith.